## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
## SYRACUSE DIVISION

====================================================================

MICHELE PISTELLO,

           **VERIFIED COMPLAINT**

         Plaintiff,

    -against-              **Case No.:**  5:16-CV-0212 (LEK/ATB)

THE BOARD OF EDUCATION OF THE
CANASTOTA CENTRAL SCHOOL DISTRICT,     **JURY DEMANDED**

         Defendant.

====================================================================

     Plaintiff, Michele Pistello, by and through her attorneys, O'HARA, O'CONNELL &

CIOTOLI, for her Verified Complaint against the above-captioned Defendant, states as follows:

### JURISDICTION

     1.     Plaintiff brings this action under the Title VII of the Civil Rights Act of 1964 at

42 U.S.C. §2000e-2; Title VII of the Civil Rights Act of 1964 at 42 U.S.C. §2000e-3; Title II of

the Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973 at 29 U.S.

Code § 794a; the Equal Protection Clause of the Fourteenth Amendment of the U.S.

Constitution; the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 at 42

U.S.C. §§ 1983 and1988; and New York Education Law § 3028-d.

     2.     This Court has jurisdiction under and has supplemental jurisdiction for the state

causes of action under 28 U.S.C. §1367.

     3.     Plaintiff served a Notice of Claim on the District dated September 1, 2015, and

was questioned by District counsel pursuant to New York State General Municipal Law § 50-h

on December 17, 2015.  (Annexed hereto as ***Exhibit "A"*** is the Notice of Claim).

{W0276006.1}

4.      This action has been commenced within the time required by General Municipal Law §50-I and Education Law §3813.

5.      More than thirty (30) days has elapsed since the Notice of Claim was served on Defendant and adjustment or payment thereof has been neglected or refused.

6.      Plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 4, 2015.  On November 25, 2015, Plaintiff received a right to sue letter from the EEOC and this complaint has been timely filed herein.

**PARTIES AND VENUE**

7.      Plaintiff's address is 213 Valenti Country Estates, Oneida, NY 13421and she was a tenured teacher at the Canastota Central School District ("Defendant" or "District).

8.      Defendant is a public central school district established under and operating pursuant to Article 37 of the Education Law of the State of New York. The District's administrative offices are located at 120 Roberts Street, Canastota, New York. The Board of Education is the governing body of the District.

**FACTUAL BACKGROUND**

9.      Plaintiff is a Special Education teacher who has taught English at the District's High School since 2010 and has always been well-evaluated and successful in helping her special education students achieve good grades and academic success, especially as it applied to the New York State Regents Exam.  Plaintiff has been a teacher for a total of 11 years.

10.      Starting during the latter part of the 2014-2015 school year, Plaintiff has been targeted, harassed and retaliated against in various ways by the District, designed to drive Plaintiff from her teaching position and to make her work environment unbearable and hostile.

11.     This harassment and retaliation has also caused Plaintiff to experience and suffer from medical and health problems for which she has had to seek emergency and long-term medical care, as well as prescription medication for the stress, anxiety and depression she has suffered for being targeted and harassed at work.

<u>*Plaintiff Sexual Harassment and Hostile Work Environment Claim*</u>

12.     Plaintiff filed a disciplinary incident report on February 4, 2015 regarding vulgar and offensive comments made by a student D.J. about her.  Plaintiff assigned D.J. detention with her that day for disorderly and rude behavior in Plaintiff's classroom and for skipping a detention she assigned him the previous day.  Later that day, D.J. said to a female student that Plaintiff could "*suck my d….*" The female student reported the incident to Plaintiff and requested to remain anonymous "*because she is afraid of him.*"  D.J. later used profanity towards Plaintiff again that day.

13.     Plaintiff, along with a witness, went to Assistant Principal Chris Rogers about D.J.'s comments and also about the female student who wanted to remain anonymous.  Mr. Rogers behaved in a hostile manner toward Plaintiff throughout the entire meeting and was shouting.  Mr. Rogers made numerous belligerent remarks to Plaintiff, such as "Who do you think you are…", "How dare you…" and "You don't do my job."

14.     In fact, student D.J. was never properly disciplined by the District and was given an In School Suspension (ISS) only, which meant that Plaintiff still had to see this student every day in school, despite the vulgar and obscene way he spoke to her and indeed, the District even showed favoritism to this student by making sure that he could still use the weight room, which was one of the punishments that Plaintiff tried to impose on him.

15.     When told about the offensive sexual comments that were made by the D.J., Mr. Rogers leaned back in his chair, hands behind his head, and said to Plaintiff "*like no one has ever said that to you before*."  When Plaintiff stated that in all her years of teaching no student had ever made such sexually offensive remarks to her, Mr. Rogers responded with a short laugh, and smirking, said "*I find that hard to believe*."

16.     Plaintiff filed a Sexual Harassment Report with the District on *February 27, 2015*. (Annexed hereto as ***Exhibit "B"*** is the Sexual Harassment Report).

17.     Also, a separate meeting took place between Mr. Rogers and the parents of the female student who reported D.J.'s comments and had wanted to remain anonymous.  During that meeting, Mr. Rogers apparently "bashed" Plaintiff to the parents, calling her a liar and stating she would be dealt with.  Mr. Rogers then questioned the parents about their daughter's connection with Plaintiff, and told them that their daughter and Plaintiff "*probably made this up*."  All of this information was relayed to Plaintiff by the parents.

18.      In a Confidential Memorandum, dated May 20, 2015, Jason Mitchell, the District's Compliance Officer, found that although Mr. Roger's comments to Plaintiff were *inappropriate*, the comments did not rise to the level of sexual harassment.  The Memorandum also stated that it was not Mr. Rogers' intent "*to imply that Ms. Pistello was a woman of low moral character*."  Clearly, even Mr. Mitchell understood that a reasonable interpretation of Mr. Rogers' actions and statement was derogatory to Plaintiff, although he stated that it was a comment that "*occurred once*" and therefore, did not rise to the level of being severe and pervasive.

19.     Plaintiff appealed this decision to the Board of Education and was thereafter informed that the Board had sustained the decision of Mr. Mitchell on July 27, 2015.

20.    Plaintiff's allegation in this action is that the reason why the District failed to take seriously her sexual harassment claim and failed to take corrective action, was because Plaintiff had previously complained to the District administration about other issues, as hereinafter stated, which caused the District to show hostility and animosity toward Plaintiff, and thereafter, the District proceeded to retaliate against Plaintiff for making this sexual harassment claim.

21.    The decision by the District on the outcome of Plaintiff's sexual harassment claim was pretextual and predetermined based on the Districts clear animosity toward the Plaintiff. However, the District's animosity toward Plaintiff does not excuse the District's insufficient reaction to her sexual harassment claim.  The District's failure to respond adequately to Plaintiff's claim, and retaliation for the same, is a violation of Title VII.

### *Plaintiff Reported Violations of Special Education Rules*

22.    For example, Plaintiff raised issues regarding the District being aware of scheduling problems for special education students for the 2014-2015 school year, as follows:

23.    On November 6, 2014, Plaintiff e-mailed Superintendent June Clarke, "cc'ing" other District administrators, titled "Action Needed," in which she pleaded with the administration to take notice and action regarding the District's non-compliance with student's Individual Education Plans ("IEP").  Plaintiff explained that she was responsible for eight resource students who were not even assigned to her class and that three students in her English class left for BOCES daily after only ten minutes of class and could not be expected to pass the English Regents based on this scheduling.

24.    Plaintiff wrote: *"[o]n each student's IEP, it states that the student is scheduled for a 41 minute English class. This indicates that we- as a district- are not in compliance. If these students fail- as they all are now failing- their parents could sue the district for not following*

*their IEP. All directors know this, yet Carolyn approved their leaving my class.  I'm sharing my*

*concern in writing with all of you in hope that this problem can be resolved*."  (Annexed hereto

as **Exhibit "C"** is the e-mail dated November 6, 2014).

25.     In response, Plaintiff was threatened with "*formal administrative action*" in an e-

mail dated December 18, 2014, because Ms. Rose wrongly claimed that she was unaware of the

situation addressed in Plaintiff's November 6, 2014 e-mail to the District administration.  Mr.

Roses' allegations against Plaintiff were not true.  Plaintiff responded in an e-mail dated

December 19, 2014.  (Annexed hereto as **Exhibit "D"** are the two e-mails).

26.     Therefore, the reason why Plaintiff's claim of sexual harassment was not taken

seriously was because the District was already targeting her for "*formal administrative action.*"

27.     Another example of animus by Defendant is that Plaintiff had customarily been

one of the graders for the English Regents exam and was even asked to conduct review classes

normally done by the English department.

28.     Despite her experience and knowledge regarding the content and the grading

process, Plaintiff was not asked to assist in the grading of the January 26, 2015 English Regents

Exam.  Believing that this was another act of harassment and retaliation on the part of the

District administration, Plaintiff asked Assistant Principal Christopher Rogers for an explanation

for this action, for which he had none, and belittled her for making inquiries.

<u>*Illegal Reprimands in Plaintiff's Personnel File*</u>

29.     Following Plaintiff's communications with the Administration regarding IEP

compliance and grading the English Regents Exam, Plaintiff then received several notices of

mandated meetings, first on January 26, 2015, and a second notice on February 25, 2015.  The

notices stated that the purpose of these meetings was to discuss "*incident(s) of engaging in*

*inappropriate, unprofessional behavior that undermines team morale and causes dysfunction*."
They also indicated that these events were "*reflective of prior behaviors,*" although there is no
record or history of any such prior behaviors.

30.     This was also during the same period of time that Plaintiff was complaining of
sexual harassment and hostile work environment.  The District started to retaliate against
Plaintiff by calling these meetings with the District administration and seeking to reprimand.
These notices and other such actions started to show a pattern of harassment, hostility and
retaliatory action toward Plaintiff.

31.     Thereafter, despite the District being put on notice, Plaintiff received another
memo dated February 25, 2015 that was also disciplinary in nature, in addition to stating facts
that were not true or accurate.

32.     After complaining about this improper disciplinary reprimand, the District agreed
to rewrite the memo, to soften and remove some of the offensive and disciplinary language, but
the basic fact remained that even the rewritten memo was still not accurate or true.  Therefore,
the entire memo should have been expunged from Plaintiff's personnel file, but was not.

<u>*The APPR Classroom Observation*</u>

33.     Plaintiff was also informed that a classroom observation for her Annual
Professional Performance Review ("APPR"), during the latter part of the 2014- 2015 school
year, was going to be conducted by Director of Special Education, Carolyn Rose, who had been
hostile toward Plaintiff, as discussed above, and therefore, Plaintiff objected to Ms. Rose
conducting this observation.

34.     Ms. Rose's hostility toward Plaintiff can clearly be seen in the e-mail dated December 18, 2014, where Ms. Rose threatened unfounded formal administrative action against Plaintiff.

35.     Thereafter, despite Plaintiff's concerns and objection, including a formal letter from Plaintiff's attorneys requesting an alternate observer, and despite the fact that there were several other District administrators who could conduct the observation, the District insisted that Ms. Rose conduct the observation.

36.     Ms. Rose's observation report contained several wrong and inaccurate statements in the comment section of the APPR evaluation, and several low scores.  Plaintiff had used this lesson plan in past years and she had received exceptionally high scores from other observers.

37.     Plaintiff met with Ms. Rose following the observation and inquired about these inaccuracies and low score, and was stonewalled by Ms. Rose.

38.     Again, only after Plaintiff objected to this APPR through her attorneys, did the District agree to change, but not delete, the offending comment, and the overall composite score for Plaintiff, which was a 95, gave Plaintiff a rating of "Highly Effective."

<u>*Transfer to the Middle School*</u>

39.     However, shortly thereafter, despite this rating of "Highly Effective," in another act of retaliation, the District transferred Plaintiff to the Middle School to teach math and reading without a reasonable explanation for the change in school or subject, making the transfer all the more suspicious and objectionable, and the in the eyes of the Plaintiff, purely punitive.  This transfer to the Middle School occurred on June 12, 2015.

40.     Again, Plaintiff objected through her counsel, that she did not have the experience or training to teach math, since Plaintiff was primarily an ELA teacher, and that she was not

certified to teach Middle School reading.  The District again, slightly relented, and withdrew the assignment to teach math, but in a notice dated, July 16, 2015, informed Plaintiff that her transfer was still effective, and that she would be solely teaching Middle School reading.

41.     As a further act of harassment and retaliation, Plaintiff was also informed that her classroom was going to be moved and that her new classroom was going to be across the hall from Ms. Rose, who had had a history of being hostile toward Plaintiff.  When Plaintiff went to look at her "new" classroom it was not set-up and was a mess.

### *Targeting of Plaintiff's Son*

42.     On April 28, 2015, while still investigating Plaintiff's sexual harassment claim against Mr. Rogers, Jason Mitchell brought Plaintiff's son into Mr. Rogers' office, without Plaintiff's knowledge or consent, even though she is a teacher in the building, and questioned her son about his relationship with a female student.

43.     Jason Mitchell accused Plaintiff's son of having a Snapchat account and made some unfounded allegations against him.  Plaintiff's son does not have any such account and has not done anything that required questioning.

44.     After challenging this action by the District, the District responded that Plaintiff's son had been cleared of all allegations.  This was just another false allegation and another attempt to target Plaintiff through her son, which was unwarranted and outrageous.

### *Plaintiff Resigns from her Teaching Position with the District*

45.     Finally, during August 2015, Plaintiff felt that the harassment and retaliation would only continue and intensify in the new school year and that her health would continue to suffer from the stress and anxiety, and therefore, she felt she had no choice but to resign her position with the District and took a new job with the Syracuse City School District.

## --FIRST CAUSE OF ACTION--
## RETALIATION UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973

46.     Plaintiff hereby incorporates paragraphs "1" through "45" inclusive, as if fully set forth herein.

47.     Plaintiff has reported and challenged the District administration's illegal or inappropriate practices, including the inappropriate placement of students, violations of IEP's, inaccurate scoring of Regents exams for special needs students, inadequate training for teachers grading special needs exams, and failure to create a safe learning environment for special needs students.

48.     After bringing these concerns to the Administration and being retaliated against for voicing them, Plaintiff contacted District School Board members, her union, ultimately SED, in attempts to make these serious concerns public knowledge.

49.      Plaintiff has retained counsel at great personal expense in attempts to protect her students and now her own professional reputation.

50.     The Enforcement Provision of Title II of the Americans with Disabilities Act protects "*any person* alleging discrimination on the basis of disability," 42 U.S. Code § 12133, and case law supports that the remedies, procedures, and rights set forth in Section 504 of the Rehabilitation Act of 1973, 29 U.S. Code § 794a, includes third-party advocated for the disabled, even when the advocates themselves are not disabled.

51.     Plaintiff's actions were in advocacy of the rights of disabled students under the ADA.

52.     Plaintiff's actions were protected under Title II of the Americans with Disabilities Act.  However, in a retaliatory response to her raising questions regarding the administration's

practices, the District has subjected Plaintiff to false accusations, harassment, retaliation, and false statements of being insubordinate and unprofessional.

53.     As a result, Plaintiff has suffered damages including humiliation, emotional distress, mental anguish, physical illness, and damage to her professional reputation, career and good name.

54.     Plaintiff seeks damages and all other forms of relief available under Title II and Section 504 of the Rehabilitation Act of 1973, 29 U.S. Code § 794a, including attorney's fees.

## --SECOND CAUSE OF ACTION--
## HOSTILE WORK ENVIRONMENT UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973

55.     Plaintiff hereby incorporates paragraphs "1" through "54" inclusive, as if fully set forth herein.

56.     Plaintiff has reported and challenged the District administration's illegal or inappropriate practices, including the inappropriate placement of students, violations of IEP's, inaccurate scoring of Regents exams for special needs students, inadequate training for teachers grading special needs exams, and failure to create a safe learning environment for special needs students.

57.     After bringing these concerns to the Administration and being retaliated against for voicing them, Plaintiff contacted District School Board members, her union, ultimately SED, in attempts to make these serious concerns public knowledge.

58.      Plaintiff has retained counsel at great personal expense in attempts to protect her students and now her own professional reputation.

59.     The Enforcement Provision of Title II of the Americans with Disabilities Act protects "*any person* alleging discrimination on the basis of disability," 42 U.S. Code § 12133,

and case law supports that the remedies, procedures, and rights set forth in Section 504 of the Rehabilitation Act of 1973, 29 U.S. Code § 794a, includes third-party advocated for the disabled, even when the advocates themselves are not disabled.

60.     Plaintiff's actions were in advocacy of her students' rights under the ADA.

61.     Therefore, Plaintiff's actions were protected under Title II of the Americans with Disabilities Act.  However, in a retaliatory response to her raising questions regarding the administration's practices, the District has subjected Plaintiff to false accusations, harassment, retaliation, and false statements of being insubordinate and unprofessional.

62.     By the acts and conduct described herein, a hostile and discriminatory work environment towards women existed at Plaintiff's position and area of employment.  This environment was sufficiently severe and pervasive to alter the conditions of Plaintiffs employment and to drive her from the workplace.

63.     Defendant had knowledge of the hostile and discriminatory work environment that existed for Plaintiff on account of her advocacy for her students, and in fact created, perpetuated, and participated in the hostile and discriminatory work environment toward the Plaintiff and allowed it to continue.  Defendant was consistently put on notice of these hostile and retaliatory acts through complaints by Plaintiff and/or her counsel.

64.     By the acts and conduct described herein, Defendant discriminated against Plaintiff in the terms, conditions, and privileges of her employment in violation of Title II, which is illegal.

65.     The hostile work environment created by the District's retaliation forced Plaintiff to resign, amounting to constructive discharge.

66.     As a direct and proximate result of these discriminatory acts, Plaintiff has suffered and/or continues to suffer monetary damages, including attorney's fees,  lost wages, physical and psychological harm, emotional distress, embarrassment, humiliation, emotional distress, damage to her professional reputation, and mental anguish and suffering.

67.     Plaintiff seeks damages and all other forms of relief available under Title II and Section 504 of the Rehabilitation Act of 1973, 29 U.S. Code § 794a, including attorney's fees.

**--THIRD CAUSE OF ACTION--**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**

68.     Plaintiff hereby incorporates paragraphs "1" through "67" inclusive, as if fully set forth herein.

69.     Title VII requires employers to provide a work environment that is free of abuse or hostility and free of discriminating animus.

70.     By the acts and conduct described herein, a hostile and discriminatory work environment towards women existed at Plaintiff's position and area of employment.  This environment was sufficiently severe and pervasive to alter the conditions of Plaintiffs employment and to drive her from the workplace, including the sexual harassment claim against Mr. Rogers stemming from the obscene and vulgar encounter with a student, along with a series of hostile meetings and write-ups, retaliation for reporting violation of special education rules, an evaluation process meant to target Plaintiff (i.e. the APPR), reassignment (i.e. to the Middle School), taking away job duties and responsibilities (i.e. grading the Regents Exam), and targeting Plaintiff's son, all within a very concentrated period of time.

71.     Defendant had knowledge of the hostile and discriminatory work environment that existed for Plaintiff on account of her gender, and in fact created, perpetuated, and participated in the hostile and discriminatory work environment toward the Plaintiff and allowed

it to continue.  Defendant was consistently put on notice of these hostile and retaliatory acts through complaints by Plaintiff and/or her counsel.

72.     By the acts and conduct described herein, Defendant discriminated against Plaintiff in the terms, conditions, and privileges of her employment in violation of Title VII, which is illegal.

73.     As a direct and proximate result of these discriminatory acts, Plaintiff has suffered and/or continues to suffer monetary damages, including attorney's fees,  lost wages, physical and psychological harm, emotional distress, embarrassment, humiliation, emotional distress, damage to her professional reputation, and mental anguish and suffering.

74.     Plaintiff seeks damages and all other forms of relief available under Title VII and 42 U.S.C. §1981a and Plaintiff is also entitled to attorney's fees under 42 U.S.C. § 1988, based on Section 1983 of the Civil Rights Act.

**--FOURTH CAUSE OF ACTION--**
**RETALIATION UNDER TITLE VII**

75.     Plaintiff hereby incorporates paragraphs "1" through "74" inclusive, as if fully set forth herein.

76.     By the acts and conduct described herein, Plaintiff engaged in protected activity by making internal complaints of discriminatory treatment as evidenced by acts of harassment and derogatory and intimidating statements being made to and about her as alleged herein and retaliation for reporting violation of Special Education rules.

77.     Defendant was aware that Plaintiff was engaging in protected activities.

78.     Plaintiff suffered adverse employment actions due to having engaging these protected activities.

79.     Based upon the forgoing, Defendant discriminated against Plaintiff in the terms, conditions, and privileges of her employment in violation of Title VII.

80.     As a direct and proximate result of these discriminatory acts, Plaintiff has suffered and/or continues to suffer monetary damages, including attorney's fees,  lost wages, physical and psychological harm, emotional distress, embarrassment, humiliation, emotional distress, damage to her professional reputation, and mental anguish and suffering.

81.     Plaintiff seeks damages and all other forms of relief available under Title VII and 42 U.S.C. §1981a and Plaintiff is also entitled to attorney's fees under 42 U.S.C. § 1988, based on Section 1983 of the Civil Rights Act.

## --FIFTH CAUSE OF ACTION--
## SECTION 1983 OF THE CIVIL RIGHTS ACT
## EQUAL PROTECTION AND RETALIATION UNDER FOURTEENTH AMENDMENT

82.      Plaintiff hereby incorporates paragraphs "1" through "81" inclusive, as if fully set forth herein.

83.     As set forth above, the Defendant deprived Plaintiff of Equal Protection of her rights under the 14th Amendment of the United States Constitution and through Defendant's retaliation against Plaintiff as alleged herein based on her gender.

84.     These acts constitute violations of the Fourteenth Amendment to the Constitution and are actionable pursuant to section 1983 of the Civil Rights Act of 1871, in that the actions taken herein by Defendant were intended to deprive Plaintiff of her rights guaranteed to by applicable and known federal law, and were done by Defendant under "color of state law" and are illegal, where the Defendant was a "state actor."

85.      As a direct and proximate result of these discriminatory acts, Plaintiff has suffered and/or continues to suffer monetary damages, including attorney's fees,  lost wages,

physical and psychological harm, emotional distress, embarrassment, humiliation, emotional

distress, damage to her professional reputation, and mental anguish and suffering.

86.     Plaintiffs are also entitled to attorney's fees under 42 U.S.C. § 1988.

## --SIXTH CAUSE OF ACTION--
## WHISTLEBLOWER – EDUCATION LAW § 3028-D

87.     Plaintiff hereby incorporates paragraphs "1" through "86" inclusive, as if fully set

forth herein.

88.     Plaintiff has reported and challenged the District administration's illegal or

inappropriate practices, including the violations of the IDEA, inappropriate placement of

students, inaccurate scoring of Regents exams, inadequate training for teachers, and failure to

create a safe learning environment.

89.      After bringing these concerns to the Administration and being retaliated against

for voicing them, Plaintiff contacted District School Board members, her union, ultimately SED,

in attempts to make these serious concerns public knowledge.

90.      Plaintiff has retained counsel at great personal expense in attempts to protect her

students and now her own professional reputation.

91.     Plaintiff is protected by Education Law § 3028-d.  However, in a retaliatory

response to her raising questions regarding the administration's practices, the District has

subjected Plaintiff to false accusations, harassment, retaliation, and false statements of being

insubordinate and unprofessional.

92.     As a result, Plaintiff has suffered damages including humiliation, emotional

distress, mental anguish, physical illness, and damage to her professional reputation, career and

good name.

## DEMAND FOR TRIAL BY JURY

1.      Pursuant to the Fed. R. Civ. P. 38, Plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that the Court enter an award of damages in her favor in a sum to be determined according to proof and as provided by law, plus attorneys' fees, costs and disbursements incurred in prosecuting this action, and such other and further relief as the court may deem just and proper.


Dated:  February 22, 2016

                                    Yours,



                                    **S/Stephen Ciotoli,**_____
                                    Stephen Ciotoli, Esq.
                                    *Attorney for Plaintiff*
                                    O'HARA, O'CONNELL & CIOTOLI
                                    7207 East Genesee Street
                                    Fayetteville, New York 13066
                                    (315) 451-3810

## INDIVIDUAL VERIFICATION

State of New York    )
                      ) ss.:
County of Onondaga  )

      Michele Pistello, being duly sworn, deposes and says that the deponent is the

Plaintiff in the within action; that deponent has read the foregoing Complaint and knows

the contents thereof; that the same is true to deponent's own knowledge, except as to the

matters therein stated to be alleged on information and belief, and that as to those matters

deponent believes them to be true.

                                         **Michele Pistello**

Sworn to before me this
10th day of February, 2016

Notary Public

EILEEN M. MALAY
Notary Public State of New York
Qualified in Onondaga County
No. 01MA6043076
Commission Expires June 12, 20__

{W0275617.1}